644 F.2d 543
 Aaron Clinton ATKINS, Petitioner-Appellee,
v.
PEOPLE OF the STATE OF MICHIGAN (William L. Cahalan, Wayne
County Prosecuting Attorney and William Lucas,
Wayne County Sheriff), Respondent-Appellant.
 No. 80-1341.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 5, 1981.
Decided March 2, 1981.
 
 William L. Cahalan, Pros. Atty., Anne B. Wetherholt, Asst. Pros. Atty., Detroit, Mich., Frank J. Kelley, Atty. Gen., Lansing, Mich., for respondent-appellant.
 Edward F. Bell, Bell & Hudson, Detroit, Mich., for petitioner-appellee.
 Before MERRITT and BROWN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 The state of Michigan appeals the District Court's grant of Atkins' petition for a writ of habeas corpus dismissing his state-court murder indictment on grounds that the state violated his sixth amendment right to a speedy trial and violated the fourteenth amendment in denying him bail. In January 1979 Atkins was arrested on the charge of first degree murder. He was released on bond by a judge of the Recorders Court in Detroit but later was remanded to jail without bond by an examining magistrate. Judge Evelyn Cooper, the trial judge, on February 6, 1979, reinstated the bond originally set, stating that neither she nor the examining magistrate had jurisdiction to disturb the bond. The state immediately applied for emergency leave to appeal this decision. On February 9, in a peremptory order, the state Court of Appeals cancelled the bond and remanded Atkins to jail without a statement of reasons. Atkins' application to appeal this ruling to the Michigan Supreme Court was denied, and he returned to jail to await trial.
 
 
 2
 The parties filed several pretrial motions, including one by a co-defendant for suppression of evidence and one by the state, brought on the date set for trial (April 5, 1979), requesting a pretrial ruling on the admissibility of evidence. The trial was postponed. On May 14 the trial court ruled against the state on the suppression motion and the prosecution's evidentiary motion and set a trial date for May 30. The prosecution again perfected an emergency appeal and moved for a stay of proceedings on May 18. The Michigan Court of Appeals agreed to hear the appeal in an expedited fashion. Oral argument was held in October 1979, when the court first returned to session, but no decision was rendered until April 16, 1980, when the trial judge's ruling was affirmed in part and reversed in part. The state's application to appeal was denied by the state Supreme Court.
 
 
 3
 Meanwhile, in August 1979, when the case was pending before the state Court of Appeals, Atkins moved the trial court to dismiss the action because his right to a speedy trial had been denied, or in the alternative to release him on bail pending trial. The court denied the motion to dismiss, but, finding that circumstances had changed since the state Court of Appeals cancelled bond in February, it ordered his release on a $50,000 bond. This was appealed by the state in an emergency fashion, and on September 12, 1979, the Court of Appeals again cancelled the bond and remanded Atkins to jail. Its decision stated simply,
 
 
 4
 It is ... ordered that the order of the trial judge setting bond be, and is hereby, set aside and the bond cancelled. Defendant is ordered remanded to the custody of the Wayne County Sheriff, pursuant to this court's order of February 9, 1979.
 
 
 5
 Atkins' request to appeal was denied by the state Supreme Court. He then filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, on November 19, 1979, requesting that the district court order either that the case be dismissed or that trial commence immediately or that the bond set by the trial court be reinstated. On April 15, 1980, the district court issued an opinion granting the writ and ordering the dismissal of the case against petitioner and his release from custody. The state appealed to this court. We affirm in part and reverse in part.
 
 I.
 A.
 
 6
 We consider first whether the speedy trial claim may be entertained prior to a trial on the indictment brought by the state against Atkins.[1] A body of case law has developed holding that although § 2241 establishes jurisdiction in the federal courts to consider pretrial habeas corpus petitions, the courts should abstain from the exercise of that jurisdiction if the issues raised in the petition may be resolved either by trial on the merits in the state courts or by other state procedures available to the petitioner. See, e. g., Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886); Fay v. Noia, 372 U.S. 391, 417-20, 83 S.Ct. 822, 837-838, 9 L.Ed.2d 837 (1963); Braden, supra; Moore v. DeYoung, supra; Brown v. Estelle, 530 F.2d 1280 (5th Cir. 1976); United States ex rel. Scranton v. New York, 532 F.2d 292 (2d Cir. 1976). Abstention from the exercise of the habeas corpus jurisdiction is justified by the doctrine of comity, a recognition of the concurrent jurisdiction created by our federal system of government in the separate state and national sovereignties. Intrusion into state proceedings already underway is warranted only in extraordinary circumstances. Thus the doctrine of exhaustion of state remedies has developed to protect the state courts' opportunity to confront initially and resolve constitutional issues arising within their jurisdictions and to limit federal judicial interference in state adjudicatory processes. This argument is especially forceful in a situation involving a speedy trial claim, because the drastic nature of the relief usually granted dismissal of the case, Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) could not be more disruptive of pending state actions.
 
 
 7
 The general argument against consideration of speedy trial habeas corpus petitions prior to exhaustion of state remedies is closely related to the doctrine that prevents appeal of adverse rulings on speedy trial motions. United States v. MacDonald, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978). Although applied in the context of direct appeal from an order by a district court, much of the reasoning in MacDonald is relevant in that of pretrial habeas corpus as well. Among the reasons offered in MacDonald against pretrial appeal are that the claimed violation may be remedied by decision on the merits so that the right is not irreparably lost if review is postponed until final judgment is rendered on the merits; and that an important factor developed in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether the right to a speedy trial has been violated the degree of prejudice suffered by the defense cannot be adequately ascertained until after the trial has been completed. 435 U.S. at 856-61, 98 S.Ct. at 1550-1553. These arguments are relevant in the context of collateral attacks as well as direct appeals and militate against a premature grant of habeas corpus relief.
 
 
 8
 These considerations, however, do not automatically resolve the question. We must distinguish between federal court orders dismissing state court cases on speedy trial grounds and federal orders requiring a prompt state trial. On occasion federal courts have, prior to trial, issued writs of habeas corpus ordering a prompt trial. The leading case on this point is Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), in which charges were pending in Kentucky against the petitioner, who was incarcerated in Alabama. Although Kentucky lodged a detainer against him, the state refused to attempt to effect his return in the near future and to grant him a trial as he had repeatedly requested. After it became evident that the state court would do nothing, the petitioner applied for habeas corpus relief, requesting that Kentucky be ordered to secure his presence for trial within sixty days or dismiss the indictment. The Supreme Court held that the application could be entertained despite the fact that it was brought prior to trial. It acknowledged that the petitioner could "assert a speedy trial defense when, and if, he is finally brought to trial." 410 U.S. at 489, 93 S.Ct. at 1127. But the Court continued,
 
 
 9
 Petitioner does not, however, seek at this time to litigate a federal defense to a criminal charge, but only to demand enforcement of (Kentucky's) affirmative constitutional obligation to bring him promptly to trial. Smith v. Hooey, 393 U.S. 374 (89 S.Ct. 575, 21 L.Ed.2d 607) (1969). He has made repeated demands for trial to the courts of Kentucky, offering those courts an opportunity to consider on the merits his constitutional claim of the present denial of a speedy trial. Under these circumstances it is clear that he has exhausted all available state court remedies for consideration of that constitutional claim, even though Kentucky has not yet brought him to trial.
 
 
 10
 Id. at 489-90, 93 S.Ct. at 1127 (emphasis in original).
 
 
 11
 Thus the speedy trial clause protects two related but distinct interests: the enforcement of the state's duty to provide a prompt trial and the protection of defendants from the prejudice that arises from a state's failure to carry out that duty. As noted by the Fifth Circuit in Brown v. Estelle, supra, "(t)his distinction apparently turns upon the type of relief sought: an attempt to dismiss an indictment or otherwise prevent a prosecution" protects the defendant from prejudice and is normally not attainable by way of pretrial habeas corpus; but an attempt to force the state to go to trial may be made prior to trial, although state remedies must still be exhausted. 530 F.2d at 1283. When enforcing the state's duty, then, the exhaustion requirement does not necessitate a trial on the merits, as it usually does when a petitioner is claiming that his ability to defend at trial has been prejudiced. To require a petitioner to await completion of a trial before he may challenge the state's refusal to grant him one would be incoherent. The exhaustion requirement, therefore, is satisfied when the petitioner has availed himself fully of the state machinery in attempting to have the state commence trial on the charges pending against him. As noted by the Supreme Court in Braden, this reformulation of the exhaustion requirement does not violate the underlying policies of federalism, for the state has the initial opportunity to consider the constitutional claim, and the relief requested will not "abort a state proceeding or ... disrupt the orderly functioning of state judicial processes." 410 U.S. at 491, 93 S.Ct. at 1128. In this circumstance the concerns underlying MacDonald's disapproval of pretrial appeal of speedy trial motions are reduced as well. An attempt to enforce the state's duty to try petitioner promptly is sufficiently independent of the merits of the action that it may be considered separately; and the factor in Barker v. Wingo, supra, that is difficult to ascertain prior to trial i. e. whether petitioner's defense has been prejudiced by the delay assumes less significance.
 
 
 12
 With these considerations in mind, we examine Atkins' petition. The district court treated the petition as requesting dismissal and, without consideration of the exhaustion question, proceeded to an analysis in light of the Barker criteria. Finding that the delay was unreasonable and prejudicial to Atkins, the court granted a dismissal. The court erred in so doing. This disposition of the speedy trial claim runs afoul of the exhaustion requirement and the underlying concerns of federalism. Because Atkins has not yet been tried, the Barker prejudice criterion is indeterminate at this point, despite the district court's attempts to apply it, and available state avenues in which he can raise the claim that his speedy trial right has been violated have not been exhausted. In addition, no special circumstances permitting pretrial habeas corpus consideration are present in this case. Moore v. DeYoung, supra, 515 F.2d at 442-43; Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952).
 
 
 13
 This conclusion does not resolve the speedy trial issue, however. Atkins has presented alternative requests for relief, including that the state be ordered to grant him his right to a prompt trial. Under Braden this request may be considered by pretrial habeas corpus, provided the state courts have had an opportunity to resolve the issue. We find that Atkins diligently presented this constitutional claim in state court prior to his petition for habeas corpus and that, therefore, he exhausted his available state remedies. In August 1979 he moved the trial court to dismiss the indictment on speedy trial grounds or to release him on bail pending trial. At that point the trial court, of course, had not the authority to order the prompt trial of Atkins in order to enforce the state's constitutional duty to do so, because at that time the state Court of Appeals was considering the prosecution's interlocutory appeal and could not be ordered by a trial court to speed up its process. When the Court of Appeals, however, considered the prosecution's appeal of the trial court's release of Atkins on bail and when the Michigan Supreme Court decided whether to permit Atkins to appeal the revocation of bail, both courts had the opportunity to consider and were confronted by the specific argument, Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), that the state was violating its duty to grant Atkins a prompt trial. After the state Supreme Court denied Atkins leave to appeal, no state avenue remained open to him to press his claim. Application for a writ of habeas corpus in this situation to consider whether the state violated its duty is proper. Braden; Brown v. Estelle, supra.
 
 B.
 
 14
 Turning to the merits of this speedy trial claim for a prompt trial, we focus primarily on the question of the reasonableness of the delay, that is, whether the state is justified in having failed to commence trial against Atkins promptly. The length of time involved here fifteen months from arrest to decision by the state Court of Appeals on the interlocutory order unquestionably is sufficient to trigger a speedy trial claim. The great bulk of this period was spent in the resolution of the interlocutory appeal resulting from the prosecution's pretrial motion filed on the day trial was originally to commence. Eleven months passed from the time the prosecution appealed the trial court's adverse decision on its motion until the state Court of Appeals handed down a decision, despite the fact that the appeal was ostensibly handled in an expedited fashion. The prosecution, of course, has the authority, and indeed the obligation, to press appeals in good faith, and we do not find that its decision to appeal arose from improper motives. The eleven month pretrial delay following the appeal, however, is unexplained. In a similar situation both the Michigan Supreme Court and the federal District Court for the Western District of Michigan have expressed the view that a violation of the right to a speedy trial can arise from the consumption of an excessive amount of time by the appeals court considering an interlocutory appeal. People v. Chism, 390 Mich. 104, 113, 211 N.W.2d 193 (1973); Chism v. Koehler, 392 F.Supp. 659 (W.D.Mich.1975), aff'd, 527 F.2d 612 (6th Cir.), cert. denied, 425 U.S. 944, 96 S.Ct. 1686, 48 L.Ed.2d 188 (1976). In the present case we find that the time spent on appeal, when added to the previous four month delay, resulted in a violation of the duty of the state to bring Atkins promptly to trial.
 
 
 15
 At oral argument, the state has demonstrated a willingness to commence trial of this action, and given that the appeal of the interlocutory matter has since been completed, there seems to be no threat of further delay. Because a violation of the duty to try Atkins promptly has been found, however, we are constrained to order that his trial commence within sixty days, to guarantee that no further infringement of his right to a trial occur. If trial has not begun by the end of that period, the case against Atkins must be dismissed. This conclusion does not necessarily establish a violation of Atkins' right to a speedy trial warranting dismissal of the case against him. Only one element of that claim the element of unreasonable delay has been established. Another crucial element in such a claim, as discussed above, is the degree of prejudice suffered by a defendant, an element that can be accurately ascertained only after completion of the trial.
 
 II.
 
 16
 We next must consider whether the revocation of bail by the state Court of Appeals on two occasions violated Atkins' constitutional rights. Atkins and the court below have focused upon the fourteenth amendment, arguing that the Court of Appeals behaved arbitrarily and capriciously in the manner in which it revoked bail, in violation of Atkins' right to due process of law. Thus although this issue concerns the right to liberty on bail pending trial, this is not an eighth amendment case. That amendment's statement that "(e) xcessive bail shall not be required" has never been interpreted to require that all persons awaiting trial be released on bail. The states have the authority to determine that certain arrestees are so dangerous to the community because of either the nature of the crime with which they are charged or their propensity to flee before trial that they may be denied bail and incarcerated. The crucial considerations in the present case are that "inherent in our American concept of liberty" is the general existence of the right to bail, Mastrian v. Hedman, 326 F.2d 708, 710 (8th Cir. 1964), and that if bail is denied, the denial must not violate the procedural standards developed from the due process clause. Id. at 711; United States ex rel. Shakur v. Comm'r of Corrections, 303 F.Supp. 303 (S.D.N.Y.), aff'd, 418 F.2d 243 (2d Cir. 1969), cert. denied, 397 U.S. 999, 90 S.Ct. 1144, 25 L.Ed.2d 408 (1970). Atkins' liberty interest is sufficiently urgent that as a matter of due process it cannot be denied without the application of a reasonably clear legal standard and the statement of a rational basis for the denial.
 
 A.
 
 17
 Before we may consider this issue, we must once again determine whether a pretrial habeas corpus petition is a proper vehicle to raise the claim. The protection against unreasonable bail pending trial has been found by the federal courts to be one of the few rights, along with the right to be free of double jeopardy, Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); Gully v. Kunzman, 592 F.2d 283 (6th Cir.), cert. denied, 442 U.S. 924, 99 S.Ct. 2850, 61 L.Ed.2d 292 (1979), whose vindication may be asserted prior to trial, either by direct appeal of an adverse interlocutory order or by a petition for habeas corpus. Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951); United States v. MacDonald, 435 U.S. 850, 853-61, 98 S.Ct. 1547, 1549-1553, 56 L.Ed.2d 18 (1978). If asserted by way of habeas corpus, however, the petitioner must demonstrate that state remedies have been exhausted. Then, as in the case of federal review of the state's duty to afford a prompt trial under the speedy trial clause, consideration of the right to bail pending trial avoids the concerns militating against piecemeal appeal or federal interference in state criminal proceedings. The issue of whether the right to bail has been denied is collateral to and independent of the merits of the case pending against the detainee, and it is a right that, if not asserted immediately at the time it is infringed, is irremediably lost. Stack v. Boyle, supra, 342 U.S. at 12, 72 S.Ct. at 7 (Jackson, J., concurring). Cf. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545-47, 69 S.Ct. 1221, 1225-1226, 93 L.Ed. 1528 (1949) (presenting criteria for "collateral order" exception to general rule prohibiting piecemeal appeal). In addition, as in Braden, supra, if state courts have been offered an opportunity to confront the issue, then a petition to the federal courts prior to trial does not violate the values of federalism.
 
 
 18
 The present case in a narrow sense involves questions of due process, which usually may not be considered by way of pretrial habeas corpus. Gully v. Kunzman, supra, at 287-88. The due process questions, however, exist here only in connection with the right to bail pending trial a right that must be defended immediately if it is to be protected at all. Accordingly, we may consider this portion of Atkins' petition at this time, provided he has exhausted available state remedies. United States ex rel. Goodman v. Kehl, 456 F.2d 863 (2d Cir. 1972); United States ex rel. Shakur v. Comm'r of Corrections, 303 F.Supp. 299 (S.D.N.Y.1969); United States ex rel. Covington v. Coparo, 297 F.Supp. 203 (S.D.N.Y.1969).
 
 
 19
 Atkins has claimed in the state courts that his right to bail pending trial was violated. On two occasions the state Court of Appeals cancelled, without a statement of reasons, the bond set by the trial court, and on both occasions Atkins sought leave to appeal to the Michigan Supreme Court, arguing that the Court of Appeals violated the Michigan Court Rules and acted arbitrarily by revoking bond in this manner. When leave was denied no avenue remained in the state court system. Atkins' only recourse was to the federal courts by way of a petition for habeas corpus.
 
 B.
 
 20
 We turn now to the merits of the bail issue. The Michigan Constitution and statutes provide that before conviction all persons shall be permitted release on bail, except in cases involving murder or treason "when the proof is evident or the presumption great." Mich.Const. Art. I, § 15; Mich.Stat.Ann. § 765.5. The Michigan Court Rules, promulgated by the state Supreme Court, provide that if a lower court's bail decision is reviewed, it "remains in effect and may not be vacated, modified, or reversed except on a finding of an abuse of judicial discretion." Rule 790.7(d). In Atkins' case the Court of Appeals twice cancelled the bond set by the trial court, giving reasons for the action on neither occasion. The parties and the court below have debated the possible reasons for the Court of Appeals' decisions: whether the presumption of guilt was great enough to warrant a refusal to set bond, whether jurisdiction reposed in the trial court to reinstate the bond revoked by the examining magistrate in February 1979, or whether the Court of Appeals might have found an abuse of discretion on the part of the trial court.
 
 
 21
 Such guesswork is improper. The lack of reasoning, the total silence of the Court of Appeals appears to constitute a violation of the Michigan Court Rules. People v. Spicer, 402 Mich. 406, 263 N.W.2d 256 (1978). It also constitutes an arbitrary denial of Atkins' fundamental interest in liberty pending trial and therefore violated his right to due process of law. Bail may not be denied arbitrarily. Mastrian v. Hedman, 326 F.2d 708 (8th Cir. 1964). Here bond was twice cancelled in cursory orders supplying no reasons. This renders any meaningful review impossible and violates the basic norms of judicial decisionmaking, which require that decisions generally be reached through reasoned argument, not by fiat. The fourteenth amendment does not permit such an important interest as that of liberty pending trial to be curtailed in so arbitrary a fashion. Reasons very well might exist to deny Atkins his freedom on bail while he awaits trial. We do not address this question. We state only that if his liberty is to be denied, it must be done pursuant to an adjudicatory procedure that does not violate the standards for due process established by the fourteenth amendment.
 
 III.
 
 22
 Accordingly, the district court's dismissal of the case against Atkins is reversed, and the charges are reinstated. The trial, however, must commence within sixty days, or the case shall be dismissed. The order of Judge Evelyn Cooper releasing Atkins from custody on a $50,000 bond is reinstated, and Atkins shall remain at liberty according to the conditions thereof until trial commences, unless that order is vacated or modified in a manner consonant with due process.
 
 
 
 [1]
 Atkins' petition under § 2254 was improper, because that section applies only in post-trial situations, affording relief to a petitioner "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a). Pretrial petitions such as Atkins' are properly brought under § 2241, which applies to persons in custody regardless of whether final judgment has been rendered and regardless of the present status of the case pending against him. For a discussion of the distinction between post-trial habeas corpus relief under § 2254 and pretrial under § 2241, see Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 503-04, 93 S.Ct. 1123, 1133-1134, 35 L.Ed.2d 443 (1973) (Rehnquist, J., dissenting), and Moore v. DeYoung, 515 F.2d 437, 441-42 (3d Cir. 1975)