**Dwight Carvel LOVE, Petitioner,**

v.

**Robert FICANO, Wayne County Sheriff, Respondent.**

No. Civ.A. 98–CV–71652–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 10, 1998.

Sarah E. Hunter, Birmingham, MI, for Plaintiff.

Janice M. Bartee, Detroit, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER

TARNOW, District Judge.

### I. Introduction[1]

Petitioner Dwight Carvel Love is presently incarcerated in the Wayne County Jail located in Detroit, Michigan. Petitioner Love, through his attorney Sarah E. Hunter, has filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241(c)(3) challenging his confinement pending the prosecution's appeal of Judge Daphne Means Curtis's Opinion granting petitioner a new trial, pursuant to his successive motion for relief from judgment under M.C.R. 6.500 et seq.[2]

---

1. Staff Attorney Martin Cadwell provided quality research assistance.

2. Petitioner initially filed this action under 28 U.S.C. § 2254. On July 31, 1998, petitioner filed a motion to amend the statutory authority under which his petition is being filed to 28 U.S.C. § 2241(c)(3). This Court finds that 28 U.S.C. § 2241(c)(3) is the proper statutory authority, because, inter alia, petitioner is not seeking review of his judgement of conviction in this habeas action. This distinguishes petitioner's case from Moore v. Egeler, 390 F.Supp. 205 (E.D.Mich.1975), where the petitioner sought review of his substantive constitutional claim challenging his judgment of conviction and release on bail pursuant to 28 U.S.C. § 2254.

In the instant case, petitioner does not seek review of his state judgment of conviction, which has already been undermined by the trial court's opinion granting him a new trial. Petitioner seeks only release on bond, arguing that the Michigan Court of Appeals unexplained order vacating his release on bond by the trial court violates due process of law. 28 U.S.C. § 2241 "applies to persons in custody regardless of whether final judgment has been rendered and regardless of the present status of the case against him." Atkins v. People of the State of Michigan, 644 F.2d 543, 545, n. 1 (6th Cir.), cert.

The Court of Appeals affirmed on July 31, 1998, lv. to appeal applied for.

Judge Curtis granted petitioner's motion for a new trial in an opinion dated March 21, 1997. A bond hearing was held on March 24, 1997. At that hearing, Judge Curtis granted petitioner's motion for bond pending the prosecution's appeal, stating her reasons for granting the motion on the record. Bond was set in the amount of $50,000.00 cash or surety. Judge Curtis denied the prosecution's motion for a stay. No motion for stay was filed at the Michigan Court of Appeals.

On June 4, 1997, the Michigan Court of Appeals entered an order granting the prosecution's application for leave to appeal the trial court's grant of a new trial. The Court of Appeals order also stated:

> It is further ordered that defendant is to remain incarcerated pending resolution of this appeal. Any orders of the lower court granting pretrial release of defendant are hereby VACATED. If defendant has been released, the lower court shall immediately issue such process as is necessary for defendant's apprehension and reincarceration. MCR 7.216(A)(7).

*People v. Dwight Carvel Love*, Michigan Court of Appeals No. 202344 (June 4, 1997). On June 5, 1997, petitioner voluntarily surrendered and was placed back in custody.[3]

The Michigan Court of Appeals affirmed the trial court's grant of a new trial in an unpublished opinion on July 31, 1998. The prosecutor filed an application for leave to appeal on August 20, 1998 (No. 112883).

Petitioner challenged the Michigan Court of Appeals' decision to vacate his release on bond in an application for leave to appeal to the Michigan Supreme Court. The Michigan Supreme Court denied petitioner's application for leave to appeal, stating that it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Dwight Carvel Love*, Michigan Supreme

Court No. 109687, 1997 WL 394347 (June 30, 1997). Consequently, petitioner has exhausted his state court remedies concerning his challenge to the Michigan Court of Appeals' decision to vacate his bond. *Atkins v. People of the State of Michigan*, 644 F.2d 543, 548, cert. denied, 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981).

Petitioner contends that the Michigan Court of Appeals unexplained order vacating the trial court's order granting release on bond violated his constitutional right to due process of law in the bond determination process. The prosecution contends that, "[b]ecause petitioner has been *convicted* of murder" and the trial court's grant of a new trial is not final, "he is not in the same position of one who is seeking pre-trial release." Further, the prosecutor argues the Michigan Court of Appeals was not required to explain its order vacating the lower court's order granting release on bond. (Resp. Answer at 2). Questions before this Court include: 1) whether Mr. Love is effectively a pre-trial detainee or post conviction detainee; 2) whether petitioner—having been granted a new trial by the trial court upon a ruling that his conviction was a miscarriage of justice and that constitutional errors at his trial probably resulted in the conviction of an innocent person and having been granted release on a $50,000 cash or surety bond by the trial court—has a fundamental interest in liberty pending the prosecutor's appeal of the grant of a new trial; and, 3) whether, if petitioner had such a protected liberty interest, it was violated by the Michigan Court of Appeals cancellation of his bond without any explanation. This Court concludes Mr. Love is a pre-trial detainee; Mr. Love has a protected liberty interest; and that liberty interest was denied by the cancellation of bond without reason(s) or due process.

## II. Factual and Procedural Background

On May 19, 1982, petitioner was convicted of felony murder, assault with intent to mur-

---

denied, 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981). Accordingly, this Court concludes that the instant petition is properly brought under § 2241.

**3.** Judge Curtis stated on the record that "the Defendant will be temporarily in the custody of the Wayne County Sheriff pending return to the

Corrections Department. The Corrections Department will determine where he actually be incarcerated within that system." *People v. Dwight Carvel Love*, Case No. 81–06966, Proceedings dated June 5, 1997. Petitioner remains incarcerated in the Wayne County Jail at the date of this opinion.

der, two counts of assault with intent to rob while armed, and felony firearm. Petitioner's convictions arose out of the attempted robbery and shooting of James Connelly and his companion, Van David Nolf. Connelly was shot to death in the incident. Nolf was shot at, but not injured. Nolf identified petitioner as the shooter in a photo array conducted on September 29, 1981, and in an in-person line-up on October 19, 1981. Nolf also identified petitioner as the shooter at his trial. On May 29, 1982, petitioner was sentenced to four terms of life imprisonment without possibility of parole. Petitioner never confessed to committing the crimes and asserted that he was innocent at his sentencing.

All but one of petitioner's convictions were affirmed on direct appeal. Petitioner's conviction for the assault with intent to rob while armed of James Connelly was vacated by the Michigan Court of Appeals because it violated the bar against double jeopardy.

While serving his life sentence, petitioner filed numerous unsuccessful appeals, motions for new trial, and motions for relief for post-judgment relief. Petitioner raised various constitutional issues and asserted his claim of actual innocence each time he sought relief.

In 1994, petitioner retained counsel for what the prosecutor referred to as his sixth motion for postconviction relief. On July 31, 1995, and in a supplement filed on December 18, 1995, petitioner filed a motion for relief from judgment under M.C.R. 6.500, et. seq. before Recorder's Court Daphne Means Curtis, the successor-in-office to the judge who presided over petitioner's trial, Judge Edward M. Thomas. This motion alleged actual innocence; constitutional violations, including claims of ineffective assistance of counsel and a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); challenged the validity of the eyewitness identification of petitioner as the shooter, and set forth newly discovered exculpatory evidence.

A hearing on the motion was held which was conducted intermittently from the summer of 1996 to the winter of 1997. The newly discovered evidence consisted of a confession given by Dannelle Fisher who had come forward initially claiming only that he had witnessed the crimes and knew petitioner was innocent. Fisher submitted to a polygraph test administered by certified forensic examiner and retired F.B.I. agent William E. Robertson. Robertson questioned Fisher and determined that Fisher was lying about his contention that he was an innocent witness to the killing of Connelly. Robertson interrogated Fisher about the crimes. Fisher admitted that he had not been truthful when he denied that he had been involved in the crimes.

On March 21, 1997, Judge Curtis issued an opinion granting petitioner a new trial. The trial evidence against petitioner Dwight Love had consisted of an eyewitness identification by victim David Van Nolf and testimony from petitioner's girlfriend Jennifer Johnson. Petitioner did not confess or make any inculpatory admissions. The murder weapon was never found and no trace evidence linked petitioner to the crime.

Jennifer Johnson testified that she had made two statements to police. One statement indicated that she was awake in the same room with petitioner when the gunshots were fired and that she looked out the window at the body with him. The other statement indicated that she was asleep in another room at the time, did not hear the shots, and was awakened by petitioner and told to look out the window. Johnson did not testify that petitioner told her what to say to the police. However, she did testify that she was afraid of petitioner, in part because they had fought earlier that night. The prosecutor implied that petitioner had coerced Johnson to give police a statement which provided him with an alibi and had done so to hide his guilt.

Van David Nolf identified petitioner as the shooter at his trial. However, Nolf gave a description and assisted in the production of a composite drawing of the shooter that did not match petitioner's appearance.[4]

4. "Nolf described and the composite depicted, a man with a high prominent forehead, a narrow nose, somewhat thin lips, high cheekbones, and pockmarked skin. That description is inconsistent with evidentiary hearing testimony regarding defendant's 1981–1982 physical appearance

Dannelle Fisher's confession matched the known facts of the robbery in many, but not all respects. Most importantly, in addition to admission of his own involvement, Fisher placed a Keith and Chauncey Taylor/Brown at the crime scene. This information could not have come from reading the trial transcript, because no trial testimony or exhibit mentioned them. Information regarding these men, including an anonymous tip that they had been present at the shooting, was found in the police file disclosed in 1996. Judge Curtis found that Fisher's confession to retired agent Robertson provides support to petitioner's claim of innocence and is admissible as newly discovered evidence and as a statement against penal interest.

Petitioner also took a polygraph test administered by Robertson. Robertson offered his opinion that petitioner was being truthful when he denied any involvement in the crime. The trial judge found that the results of petitioner's polygraph test were admissible in support of his motion for a new trial.[5] This ruling was based on findings that 1) the test was performed under conditions conforming to Michigan law and 2) because petitioner had not testified at his trial, his credibility had not been assessed by the trier of fact.

The trial judge found that trial counsel had been ineffective for failing to call an alibi witness, Ernest Johnson, who was present in his shop located directly beneath petitioner's apartment the night of the shooting. Johnson had been prepared to testify that the stairs behind his shop leading to petitioner's apartment were very creaky and that he did not hear anyone use the stairs or see petitioner come into the shop that night. The trial judge found that, although there were other ways to enter petitioner's apartment besides coming through Johnson's shop and

up the creaky stairs, the evidence against petitioner was so weak that failure to call Ernest Johnson was not a reasonable trial strategy. Petitioner was therefore denied the effective assistance of counsel.

The trial judge also found that a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), occurred and that this also denied petitioner a fair trial. The withheld evidence was revealed on the last day of petitioner's evidentiary hearing and was described as a miscellaneous police file. The file contained a letter from petitioner to Jennifer Johnson and petitioner's 1981 statement to the police. The file also contained suspect cards and other information regarding Keith and Chauncey Taylor, and information that a Darryl Camper, who resembled petitioner's brother, might have been involved in the crime.[6] The trial judge found that petitioner's 1981 statement to the police would have undermined the prosecution's theory that petitioner told Jennifer Johnson to lie about whether she was sleeping when the shots were fired. The trial judge also found that information about Camper and his resemblance to Rex Love would have further impeached Van David Nolf's ability to identify his attackers.

Finally, the trial judge also found that problems with cross–racial identification contributed to the miscarriage of justice in petitioner's case.[7] The judge based this finding upon the inconsistencies and inaccuracies in Van David Nolf's description and identification of petitioner and his brother Rex Love as well as one additional fact. Nolf had mistakenly believed that a black attorney named Bob Mitchell represented one of the defendants at the preliminary examination and had questioned him (Nolf) there. In fact, Bob Mitchell had not been present at

and his present physical appearance: a rather flat, small forehead, a broad nose, smooth skin, full lips, and round cheekbones. He also described a scar above the shooter's lip and a milky, bluish coloration to his eyes, also inconsistent with the defendant's appearance." Opinion, Recorder's Court No. 81–06966 (March 21, 1997) at 6.

**5.** Petitioner does not assert that the polygraph test results will be admissible at any new trial

which may be held. See, *People v. Barbara*, 400 Mich. 352, 255 N.W.2d 171 (1977).

**6.** Petitioner's brother, Rex Love, was also charged with involvement in these crimes, after Van David Nolf identified him as one of his assailants. Rex Love was tried with petitioner and was acquitted on all counts.

**7.** Petitioner and his brother Rex Love are black. Van David Nolf is white.

the examination; petitioner had been represented by another black attorney, Thomas Binion.

The trial judge summarized her ruling granting petitioner a new trial as follows:

In this case, where important evidence was withheld, ineffective assistance rendered, identification of the defendant was unreliable and inconsistent, a witness confessed to the crime and defendant passed a polygraph, all of the factors reflect that defendant was denied a fair trial and his conviction constituted a miscarriage of justice.

Opinion, Recorder's Court No. 81–06966 (March 21, 1997) at 19.

On March 24, 1997, a hearing was held on petitioner's emergency motion for bond pending appeal or retrial. The trial judge noted that petitioner had no prior convictions for assaultive crimes and that there was no evidence that he had committed any assaultive acts or had been so charged during his fifteen years imprisonment. Defense counsel noted that petitioner had never failed to report for a court appearance and stated that petitioner had significant community ties, including a wife and children. Defense counsel also argued that petitioner had spent fifteen years in prison for a crime he did not commit.

The prosecutor argued that, whether petitioner was considered a pre-trial detainee, or a person seeking bond pending appeal, "he's still accused of murder and all of the rules relating to bond pending pretrial release of an accused murderer would still apply. You still have to show, you know whether, if the proof is evident, the presumption great, he's not entitled to bond at that point." Bond Hearing Tr. dated March 24, 1997 at 48.

In Michigan bond may be denied before conviction where a person is charged with murder "when the proof is evident or the presumption great." Michigan Const.1963, art. 1, § 15. *See, People v. Sligh,* 431 Mich. 673, 431 N.W.2d 395 (1988).

The trial judge found that petitioner did not represent a danger to society. Finally, the trial judge found that there were substantial issues to decide on appeal and summarized her view of petitioner's case as follows:

This case, in this Court's opinion was decided on the very, very flimsiest of evidence. The physical description or descriptions of the Defendant, as well as the composite drawing that was caused to be made by the Complainant bore little resemblance to the actual physical appearance of the Defendant.

There was absolutely no other evidence other than the inference from he girlfriend's testimony that she may have been told to lie by the Defendant, to say that she was in the same room of the apartment and awake at the time shots were fired, rather than in another room asleep. There was no trace evidence, no gun, no bullets, no confession, no other eyewitness account.

*When you consider that with potentially exculpatory evidence that was contained in a miscellaneous police file that did not surface until the last day of the evidentiary hearing in October of 1996, that what I deem to be ineffective assistance of counsel for failure to call a very important witness, a witness who may have been able to say whether or not the Defendant was seen or heard going out of or coming into his apartment across from the robbery murder scene, as well as the evidence that someone else confessed to the crimes, any one or more of those particular issues leads to, and did, in fact, lead to the conclusion that there was a miscarriage of justice. As to whether or not an appellate court or courts agree with me is an entirely different issue.*

*The Defendant has spent fifteen years in prison on a conviction that probably should never have been had.*

Bond Hearing Tr. dated March 24, 1997 at 51–52.

The trial judge set petitioner's bond at $50,000.00 cash or surety. The bond was posted and petitioner released.

On June 4, 1997, the Michigan Court of Appeals granted the prosecution's application for leave to appeal the trial court's order

granting petitioner a new trial. The Michigan Court of Appeals also:

further ordered that the defendant is to remain incarcerated pending resolution of this appeal. Any orders of the lower court granting pretrial release of defendant are hereby VACATED.

*People v. Dwight Carvel Love,* Michigan Court of Appeals No. 202344 (June 4, 1997).

The Michigan Court of Appeals did not give any reason for its order vacating the trial court's order granting petitioner's release on bond. Respondent had not filed a motion to revoke bond in the Court of Appeals. (Oral argument, 8/11/98 at 7).

Petitioner presented himself to the trial court on June 5, 1997. He was remanded to the custody of the Wayne County Sheriff, where he remains at this time.

It must be noted that there is no valid order of conviction in place in petitioner's case at this time. Petitioner has been granted a new trial by the trial court, a court of record under Michigan law. The trial court denied the prosecutor's motion for a stay. Further, respondent has not informed this Court that the Michigan Court of Appeals has issued a stay of the trial court's decision.

On June 5, 1997, petitioner filed an application for leave to appeal to the Michigan Supreme Court, asserting that the vacation of his bond by the Michigan Court of Appeals was arbitrary and capricious, in violation of his right to due process of law under the Fourteenth Amendment. Petitioner's application for leave to appeal the Michigan Court of Appeals order vacating his release on bond was denied by the Michigan Supreme Court because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Dwight Carvel Love,* Michigan Supreme Court No. 109687, 1997 WL 394347 (June 30, 1997).

On April 20, 1998, petitioner filed a petition for habeas corpus in this Court, maintaining that he has exhausted his state remedies concerning his release on bail or bond pending appeal or retrial and that the Michigan Court of Appeals decision vacating his release on bond violated his constitutional right to due process of law. Petitioner cites as precedent *Atkins v. People of the State of Michigan,* 644 F.2d 543 (6th Cir.), *cert. denied,* 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981), which held that the Michigan Court of Appeals cancellation of a pre-trial murder defendant's bond without giving any reasons violated his right to due process of law.

Respondent has answered the petition. Respondent contends that the Michigan Court of Appeals unexplained cancellation of petitioner's bond under the authority of M.C.R. 7.216(A)(7) was lawful. Respondent further contends that *Atkins* does not apply to petitioner's case, because petitioner—having been tried, convicted, and now granted a new trial—is not a pre-trial detainee, but merely an appellee arguing against setting aside an order for a new trial which will probably be reversed on appeal.[8] Respondent's prediction was wrong. See opinion, *People v. Love,* (7/30/98), lv app for 8/20/98 (affirming the trial court's order granting petitioner a new trial).

### III. Discussion

#### A. Petitioner's Current Status

In an order dated June 4, 1997, the Michigan Court of Appeals granted the prosecution's application for leave to appeal the trial court's opinion granting petitioner a new trial and vacated the trial court's order granting release on bond. Consequently, petitioner is currently incarcerated in the Wayne County Jail. The prosecution's appeal of the trial judge's opinion granting petitioner a new trial is pending in the Michigan Supreme Court on application for leave to appeal filed by the prosecutor August 20, 1998.

Petitioner contends that he is a pre-trial detainee. Petitioner notes that he is being detained in the Wayne County Jail and not in the custody of the Michigan Department of Corrections. Petitioner stresses that the trial court has found that his conviction was a miscarriage of justice and that he is entitled

---

8. "A trial court's decision on a motion for a new trial is reviewed for an abuse of discretion."

*People v. Love, Id.,* found no abuse (Op at 6).

to a new trial. Petitioner also notes that the trial court granted petitioner release on $50,000.00 bond, cash or surety, after finding: petitioner was not likely to pose a danger to other persons; there were substantial issues on appeal; petitioner had substantial family ties in the area; and, there was no evidence in the record that petitioner was unlikely to appear in court when so ordered.

Respondent argues that "[b]ecause petitioner has been *convicted* of murder he is not in the same position of one who is seeking pre-trial release. Petitioner's position is similar to one seeking bond pending appeal." Respondent's Answer at 2. Respondent further asserts that "[p]etitioner's situation is analogous to that found in *People v. Sligh,* 431 Mich. 673, 431 N.W.2d 395 (1988), wherein the Michigan Supreme Court held that the ordinary bond *pending appeal* statutes (M.C.L. §§ 770.8, 770.9, 770.9a) apply when the People seek appellate relief from a postconviction grant of relief to the defendant; the statute places the burden on the convicted defendant to show by clear and convincing evidence that he or she is not a danger to others and by clear and convincing evidence that there are substantial issues." Respondent's Answer, *supra* at 2.

In *People v. Sligh, supra,* the defendant was convicted by a jury of second degree murder. The defendant's conviction was reversed by the Michigan Court of Appeals on the basis of an omitted jury instruction and improper prosecutorial argument. The defendant's motion for bond was denied in the trial court and the Michigan Court of Appeals. The prosecution sought leave to appeal to the Michigan Supreme Court, which ordered the application held in abeyance.

The defendant argued that he was no longer being held pursuant to a presumptively valid conviction and was entitled to release on bail or bond as if he were an incarcerated defendant who had never been tried. The Michigan Supreme Court held that "during the pendency of a plaintiff's application for leave to appeal to this Court from a Court of Appeals reversal of a criminal conviction, a motion by the defendant for bond pending appeal will be governed by §§ 8 and 9 or 9a, as applicable, of Chapter 10 of the Code of Criminal Procedure." *People v. Sligh, supra* at 682, 431 N.W.2d 395. These are the sections governing admission to bail in postconviction appeals.[9]

In *People v. Sligh, supra,* the Michigan Supreme Court held that, during the pendency of the *prosecution's* application for leave to appeal, admission to bail of a criminal defendant whose murder conviction was reversed in the Michigan Court of Appeals and who was denied bail by the trial court and the Court of Appeals was governed by M.C.L. § 770.9a. This holding was made despite the fact that, by its terms, M.C.L. § 770.9a(2) governs appeals where the *defendant* has filed an appeal or application for leave to appeal. Furthermore, the holding in *People v. Sligh* was made despite the fact that, by it terms, M.C.L. § 765.7 governs admission to bail where "an appeal is taken by or on behalf of the people of the State of Michigan from a court of record." [10]

This suggests that M.C.L. § 770.9a(2) also governs bond determination decisions during the prosecution's appeal of a trial court ruling overturning a defendant's convictions. And, in fact, petitioner argues that the trial

---

9. The right to bail of a defendant convicted of an assaultive crime and sentenced to a term of imprisonment who has filed an appeal, or an application for leave to appeal, is governed by M.C.L. § 770.9a(2). M.C.L. § 770.12(3). By its terms, M.C.L. § 765.7 governs admission to bail where "an appeal is taken by or on behalf of the people of the state of Michigan from a court of record...."

While petitioner contends that he should be considered a pretrial detainee, he also maintains that his right to bond is governed by M.C.L. § 770.9a, citing *People v. Sligh, supra,* as authority. Petition for Writ of Habeas Corpus at 4; Petitioner's Brief at 18.

10. "The supreme court, the court of appeals, the circuit court, the probate court and other courts designated as such by the legislature shall be courts of record and each shall have a common seal." Mich. Const. Art. 6, § 19. M.C.L. § 600.1416(1) states that: "The following courts are courts of record and possess seals: (a) the supreme court, (b) the several circuit courts, (c) the several probate courts, (d) the Recorder's court of Detroit, (e) the court of claims, and (f) any other courts the legislature designates as courts of record."

judge appropriately applied the criteria from M.C.L. § 770.9a as required by *People v. Sligh, supra,* in making her determination of petitioner's bond request. Under M.C.L. § 770.9a(2), a defendant shall not be admitted to bail unless the trial or appellate court finds by clear and convincing evidence both that the defendant is not likely to pose a danger to other persons and that the appeal or application raises a substantial question of law or fact.

However, *People v. Sligh* does not address the issue of whether a defendant who has been granted a new trial by the trial court should be considered a pre-trial detainee. The defendant in *People v. Sligh* had his conviction reversed on legal grounds by the Michigan Court of Appeals. *Sligh* addresses the issue of the status of a defendant who has received an opinion indicating an order will be issued remanding for a new trial in 21–28 days.

■ In the instant case, the trial court issued an opinion granting petitioner a new trial. The trial court denied the prosecution's motion to stay that decision. The prosecutor sought and was granted leave to appeal that opinion in the Michigan Court of Appeals. The Michigan Court of Appeals has affirmed the judgment of the trial court. This Court has not been informed of the entry of any order by the Michigan Court of Appeals staying the judgment of the trial court.

■ Judge Means's written ruling granting petitioner a new trial is an order of judgment under M.C.R. 6.508(E), despite being labeled an "opinion." See, *People v. Vincent,* 455 Mich. 110, 565 N.W.2d 629 (1997). The judgment of the trial court is self-executing, unlike that of the Michigan Court of Appeals. See, M.C.R. 6.427 and M.C.R. 7.215(F). Therefore, no valid order of conviction is any longer in effect against petitioner. Consequently, he is effectively a pretrial detainee.

*People v. Chambers,* 439 Mich. 111, 479 N.W.2d 346 (1992), *People v. Holbrook,* 180 Mich.App. 710, 447 N.W.2d 796 (1989), and

*People v. Pixler,* 134 Mich.App. 143, 350 N.W.2d 765 (1984), also suggest that petitioner should be considered a pre-trial detainee.

In *People v. Pixler,* 134 Mich.App. 143, 145, 350 N.W.2d 765 (1984), this Court found that once the defendant's original conviction was reversed on appeal he was no longer an inmate of the state prison awaiting trial on other charges, but, rather, was a pretrial detainee, and, therefore, the 180 day rule did not apply. *People v. Holbrook, supra,* at 712, 447 N.W.2d 796.

*People v. Chambers* cites *Pixler* and *Holbrook* with approval, and found that a defendant whose motion to withdraw and set aside his guilty plea was granted "was effectively in the status of a pretrial detainee." *People v. Chambers, supra,* at 116, 479 N.W.2d 346.[11]

Finally, this Court notes that, as a practical matter, petitioner is being treated by the Michigan Department of Corrections and the Wayne County Sheriff as a pre-trial detainee. After the Michigan Court of Appeals vacated petitioner's bond and ordered that he be taken back into custody, the trial court remanded petitioner to the custody of the Wayne County Sheriff, pending his return to the custody of the Department of Corrections. It is now more than one year later and petitioner remains incarcerated in the Wayne County Jail. Apparently, the Michigan Department of Corrections recognizes that a valid order of conviction is not in place in Mr. Love's case, as required by its mandate before it may take him into its custody.

Accordingly, for the reasons stated above, this Court concludes that petitioner is effectively a pre-trial detainee.

### B. Due Process and the Vacation of Petitioner's Bond

This Court has concluded that petitioner is effectively a pretrial detainee. However, the parties agree that, under Michigan law, M.C.L. § 770.9a(2) governs petitioner's admission to bail or bond.

---

**11.** There is no discussion in *Chambers, Pixler,* or *Holbrook* of the effect, if any, of any pending application by the prosecution for leave to appeal, or any pending appeal by the prosecution.

The trial court, after holding extensive hearings and considering both the trial record and the testimony of many witnesses, concluded: petitioner was denied the effective assistance of counsel; denied his right to discovery of exculpatory material; the trial evidence of his guilt was unreliable; and, there was substantial new evidence of his innocence. In short, the trial court found that petitioner was denied a fair trial and that his conviction constituted a miscarriage of justice. That is, there was a substantial possibility of actual innocence. Consequently, the trial judge entered an opinion granting petitioner a new trial.

After conducting another hearing and making detailed findings: petitioner was not likely to be dangerous; there were substantial appellate issues present; petitioner had substantial community ties; and, there was no reason to believe he would fail to appear in court; the trial court also granted petitioner release on $50,000 cash or surety bond.

Mr. Love was released on bond until the Michigan Court of Appeals vacated it. Mr. Love returned to prison when informed the bond had been revoked.

The Michigan Court of Appeals vacated petitioner's release on bond without any statement of its reasons for doing so. Petitioner served fifteen years in the state penitentiary for a conviction which has been determined to be a miscarriage of justice. He has been in the Wayne County Jail for over a year pending the Michigan Court of Appeals decision in the prosecution's appeal of the trial court's order. He is now in Wayne County jail awaiting decision on the application at the supreme court, which could be another year.

Furthermore, the Michigan Court of Appeals vacated petitioner's release on bond without this issue having been placed before it in the manner set forth in the Michigan Court Rules. M.C.R. 7.209(A)(1) states that an appeal does not stay the effect or enforceability of a judgment or order of the trial court unless the trial court or the Court of Appeals orders otherwise. M.C.R. 7.209(A)(3) states that a motion for a stay pending appeal "must include a copy of the trial court's opinion and order, and a copy of the transcript of the hearing on the motion in the trial court." Petitioner asserts that, in its application for leave to appeal to the Court of Appeals, the prosecutor did not include the appropriate motion required by M.C.R. 7.209(D) and also did not supply the Court of Appeals with a copy of the trial court's opinion and order granting release on bond and a copy of the transcript of the trial court's hearing on the motion for bond.[12]

Nonetheless, the Michigan Court of Appeals vacated petitioner's release on bond, citing as authority M.C.R. 7.216(A)(7). M.C.R. 7.216(A)(7) is a grant of discretionary authority to "enter any judgement or order or grant further or different relief as the case may require" in addition to the Court of Appeals' general powers. It would appear that this provision should not be relied upon where the Michigan Supreme Court has set forth a specific provision in the Michigan Court Rules governing the Michigan Court of Appeals' procedures for reviewing a trial court's bond determination ruling.

■ This Court does not set forth the Michigan Court of Appeals' apparent disregard for the procedure prescribed in the Michigan Court Rules for review of a trial court's bond ruling, because it believes it has a mandate to supervise that court's application or observance of the Michigan Court Rules. Nor would a failure to follow the Michigan Court Rules alone be a basis for federal habeas corpus relief. However, this Court does find that the Michigan Court of Appeals departure from the procedures set forth in M.C.R. 7.209 is evidence that its decision to vacate petitioner's bond was a deprivation of a liberty interest without due process of law.

## SUMMARY OF STATE PROCEEDINGS

After an extensive hearing, the state trial court issued an opinion granting petitioner a new trial, finding that his first trial resulted in a miscarriage of justice and that constitutional errors probably resulted in the conviction of an innocent person. The trial judge

---

**12.** Respondent has acknowledged this omission (Oral argument at 7).

found that the evidence against petitioner at trial was very weak, characterizing it as "the very, very flimsiest of evidence." Tr. Hearing of March 24, 1997 at 51. The trial judge also granted petitioner release on bond, finding after a hearing, that petitioner was not likely to pose a danger to others and that both sides will raise substantial issues on appeal, as required by M.C.L. § 770.9a, that petitioner had significant community ties, and that there was no evidence that he would fail to appear at further proceedings as required. The trial judge also stated that "[t]he defendant has spent fifteen years in prison on a conviction that probably should never have been had." Tr. Hearing of March 24, 1997 at 52.

### ANALYSIS

▬ There is no absolute federal constitutional right to release on bail pending trial or appeal. *Bloss v. People of the State of Michigan,* 421 F.2d 903, 905 (6th Cir.1970). Similarly, there is no federal constitutional right to release on parole. However, once a prisoner has been granted release on parole, a protected liberty interest is created which cannot be taken away without due process of law. *Morrissey v. Brewer,* 408 U.S. 471, 480–82, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

▬ "[W]hile there is no absolute federal constitutional right to bail pending appeal, once a state makes provisions for such bail, the Eighth and Fourteenth Amendments require that it not be denied arbitrarily or unreasonably." *Finetti v. Harris,* 609 F.2d

594, 599 (2d Cir.1979); *see also, Pulaski v. Hopkins,* 745 F.Supp. 882, 885 (E.D.N.Y.) (1990). In *Bloss, supra,* the trial court and Michigan Court of Appeals denied the defendant release on bail pending appeal and the Michigan Court of Appeals order stated bond was denied due to the defendant's history of repeatedly violating the state's obscenity laws. The Sixth Circuit stated that it found no due process violation.[13]

The Michigan Constitution and statutes provide that before conviction all persons shall be permitted release on bail, except in cases involving murder or treason, 'when the proof is evident or the presumption great.' Mich. Const. Art. I, § 15; Mich.Stat.Ann. § 765.5.

*Atkins v. People of the State of Michigan,* 644 F.2d 543, 550 (6th Cir.), *cert. denied,* 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981).

▬ Thus, while release on bail prior to trial is generally a matter of right, pre-trial bail may be denied in murder and treason cases, where proof of the defendant's guilt is strong enough.

In *Atkins,* the defendant was charged with murder. Atkins was granted release on bond by the trial court. His bond was canceled by the Michigan Court of Appeals without any explanation or statement of reasons. The Sixth Circuit ruled that this "constitute[d] an arbitrary denial of Atkins' fundamental interest in liberty pending trial and therefore violated his right to due process of law." *Atkins, supra,* at 550. Atkins's bond

---

13. The *Bloss* court also stated that "[t]he United States District Courts do not, of course, sit as appellate courts to review the use or abuse of discretion of the state courts of Michigan in granting or withholding bail pending final appeal." *Bloss, supra,* at 906.

This Court finds that this general statement does not bar this Court from reviewing petitioner's claim that the Michigan Court of Appeals vacated his bond in violation of due process. First, petitioner's case is distinguishable from *Bloss* on the facts, because in the instant case, the trial judge has found that petitioner's conviction was a miscarriage of justice and has granted him a new trial and the trial judge granted him release on bond. *Bloss's* conviction was undisturbed and the Michigan trial and appellate courts had all denied him release on bond when he filed his habeas petition seeking release on

bond pending appeal. *Bloss* was challenging a reasoned decision to deny him release on bond. Petitioner challenges a decision to vacate his release on bond without any statement of reasons.

Second, this Court is not reviewing the use or abuse of discretion by the state court, which would involve reviewing the state court's analysis or balancing of factors pertaining to the decision whether to grant or withhold bail and determining if the court had weighed these factors within acceptable limits of reason. In the instant case, this Court is determining whether petitioner had a protected liberty interest in remaining on bond after being granted his release on bond. Further, whether the Michigan Court of Appeals cancellation of his release on bond without giving any reason for doing so violated his right to due process.

could have been canceled lawfully upon a finding that the presumption of guilt was great enough to warrant refusing to set bond. However, the *Atkins* court ruled that, in the absence of a stated reason in the bond cancellation order, speculation about possible reasons was improper. The court explained that supplying no reasons for canceling defendant's bond "renders any meaningful review impossible and violates the basic norms of judicial decisionmaking, which require that decisions generally be reached through reasoned argument, not by fiat. The fourteenth amendment does not permit such an important interest as that of liberty pending trial to be curtailed in so arbitrary a fashion." *Atkins, supra,* at 550.

Having found that Atkins's bond had been canceled by the Michigan Court of Appeals in violation of due process of law, the Sixth Circuit granted the following relief:

> The order of Judge Evelyn Cooper releasing Atkins from custody on a $50,000 bond is reinstated, and Atkins shall remain at liberty according to the conditions thereof until trial commences, unless that order is vacated or modified in a manner consonant with due process.

*Atkins, supra,* at 550.

Respondent contends that, because petitioner was tried and convicted and is presently incarcerated pending resolution of the prosecution's appeal of the trial court's opinion granting him a new trial, *Atkins* does not apply to the instant case.

This Court does not agree.

■ This Court recognizes that release on bail or bond pending trial in Michigan is generally a matter of right, while release on bail or bond pending appeal is discretionary. However, even pre-trial bail or bond is not granted in every murder case. In murder cases the trial and appellate courts must exercise discretion in evaluating the strength of the evidence against the defendant when deciding whether to grant or deny bond. *Atkins* was a murder case, yet the Sixth Circuit refused to entertain speculation about possible reasons why Atkins bond may have been canceled, and found that canceling his bond without stating a reason for doing so violated due process. Thus, the *Atkins* decision shows that a due process violation may be found where "[r]easons very well might exist to deny [ ] freedom on bail," but no reasons for cancellation of bond were stated. *Atkins, supra,* at 550.

Furthermore, while petitioner is incarcerated pending the prosecution's appeal of his successful motion for a new trial, which was affirmed on appeal, petitioner's situation is essentially that of a pre-trial detainee. Petitioner is currently being confined in the Wayne County Jail with pre-trial detainees, as he has been since June 5, 1997, when his release on bond was vacated and he reported to the trial court.[14] Petitioner was tried and convicted, but his conviction has been nullified by the trial court's opinion granting him a new trial. Moreover, the trial court, after a lengthy hearing at which much testimony was offered, found that the evidence of petitioner's guilt presented at his trial had been extremely weak and his conviction was a miscarriage of justice that probably resulted in the conviction of an innocent person. The prosecution has unsuccessfully appealed the trial court's opinion. However, the trial court denied the prosecution's motion for a stay. Respondent has not alleged that the Michigan Court of Appeals has granted a stay.

This Court cannot accept respondent's implicit argument that petitioner stands in the

---

**14.** The Michigan Supreme Court has stated that: "Normally, following setting aside of a conviction, the Department of Corrections would be notified of the change in the inmate's status and the defendant would be transferred to local detention facilities either for pretrial incarceration or release on bail." *People v. Chambers, supra,* at 115, 479 N.W.2d 346. This Court has noted that, under *Phillips* and *George,* while the prosecution's application for leave to appeal or appeal is pending, the trial court's opinion granting petitioner a new trial is not yet a judgment. Yet petitioner has been confined in the Wayne County Jail, not a Michigan Department of Corrections facility, for over a year since the trial court issued an opinion granting him a new trial.

It appears that, practically speaking, although the trial court's opinion granting him a new trial is being appealed, petitioner has been treated as a pretrial detainee by the Department of Corrections and Wayne County Jail authorities, as set forth in *Chambers.*

identical position as a defendant pending appeal whose conviction has not been disturbed at all.

Finally, petitioner was granted release on bond by the trial court. Thus, petitioner is not challenging a reasoned denial of release on bond as *Bloss* did. Petitioner is challenging a cancellation of release on bond without any statement of reasons, as *Atkins* did.

This Court finds that petitioner had a protected liberty interest in remaining at liberty on bond pending the prosecution's appeal of the trial court's opinion granting him a new trial. This Court further finds that the Michigan Court of Appeals vacation of petitioner's release on bond pending the prosecution's appeal without any statement of the reason(s) for this action constituted an arbitrary denial of petitioner's protected liberty interest and violated his right to due process of law.

### SUMMARY

This Court has found that petitioner is effectively a pre-trial detainee. Further, the Michigan Court of Appeals' ruling vacating his release on bond without any statement of reasons deprived him of due process of law. Alternatively, if petitioner is deemed a person seeking bond pending appeal, and not a pre-trial detainee, this Court would nonetheless find that petitioner had a protected liberty interest in remaining at liberty on bond. This protected liberty interest was created by the trial court's decisions that petitioner's conviction was a miscarriage of justice and that he was entitled to release on bond pursuant to the factors set forth in M.C.L. § 770.9a(2).

Mr. Love has spent fifteen plus years in prison on a conviction that the trial judge found was a miscarriage of justice supported by the flimsiest of evidence. The trial judge granted his motion for a new trial and granted his motion for release on bond. The Michigan Court of Appeals vacated the order granting his release on $50,000 cash or surety bond without giving any reasons for doing so. Petitioner has spent over a year in the Wayne County Jail awaiting the Michigan Court of Appeals decision, and now the Michigan Supreme Court's decision on the trial judge's decision to grant him a new trial. This Court concludes that "the fourteenth amendment does not permit such an important interest as that of liberty pending trial," or liberty pending appellate review of a trial court's grant of a new trial after a finding of a miscarriage of justice, "to be curtailed in so arbitrary a fashion." *Atkins, supra,* at 550.

Accordingly,

The order of Judge Daphne Means Curtis releasing petitioner Dwight Carvel Love from custody on $50,000.00 cash or surety bond is reinstated,[15] and petitioner Love shall remain at liberty according to the conditions thereof until pending final resolution of the prosecution's appeal or re-trial.

### ADDENDUM

Petitioner has filed a motion to alter or amend order entered August 11, 1998 to enlarge scope of relief granted pursuant to petitioner's request for habeas corpus relief under *28 U.S.C. § 2241(C)(3).* This Court will deny that motion without prejudice to give the state court the opportunity to exercise its discretion.

---

**15.** A separate order without opinion was entered on August 11, 1998.