Joseph E. PUERTAS, Petitioner,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS, Oakland County Sheriff's Department, and Custodian of Joseph E. Puertas, Respondents.

No. Civ.A. 00–40102.

United States District Court, E.D. Michigan, Southern Division.

March 29, 2000.

Robyn B. Frankel, Bloomfield Hills, MI, for petitioner.

William G. Pierson, Oakland County Corporation Counsel, Pontiac, MI, for respondents.

### ORDER GRANTING PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION AND ENTERING PRELIMINARY INJUNCTION

GADOLA, District Judge.

Before this Court is Petitioner Joseph E. Puertas' Motion for Preliminary Injunction filed on March 8, 2000. For the reasons set forth below, this Court grants Petitioner's motion by enjoining Respondents from taking Petitioner into custody before this Court can resolve the merits of Petitioner's application for a writ of habeas corpus.

### Factual and Procedural Background[1]

Petitioner Joseph E. Puertas is 72 years old and allegedly is in poor health. He was convicted on December 2, 1999 of six counts of delivery of less than 50 grams of a controlled substance (cocaine) and one count of racketeering. The appeal of his conviction is pending in state court. Petitioner is not challenging his conviction in this Section 2241 habeas petition.

Respondents are the Michigan Department of Corrections, the Oakland County Sheriff's Department, and the custodian of Joseph E. Puertas. Respondent Oakland County Sheriff's Department has filed an appearance. Respondent Michigan Department of Corrections has not filed an appearance and, according to Petitioner and Respondent Oakland County Sheriff's Department, Respondent Michigan Department of Corrections is not expected to file an appearance.

The background of this case is rather unusual in that Petitioner was denied bond without explanation by the state trial court, twice had bond granted by the Michigan Court of Appeals, and twice had bond vacated by the Michigan Supreme Court. The bond issue has proceeded through the state courts relatively rapidly.

At sentencing on December 2, 1999, Petitioner made a motion for an appeal bond. After a brief hearing, the motion was denied by the trial court without any explanation.

On January 5, 2000, Petitioner filed a motion for bond on appeal with the Michigan Court of Appeals pursuant to Rule 7.209(D) of the Michigan Rules of Court. On January 26, 2000, the Michigan Court of Appeals granted Petitioner's motion for appeal bond, and Petitioner was released on January 27, 2000.

On January 27, 2000, the Oakland County Prosecutor filed an Application for Leave to Appeal and a Motion for Immediate Consideration with the Michigan Supreme Court.

---

1. The Court incorporates here the Factual and Procedural Background from its March 13, 2000 Order Extending Temporary Restraining Order and adds some recent background.

On February 9, 2000, the Michigan Supreme Court granted the Prosecutor's Motion for Immediate Consideration, vacated the Michigan Court of Appeals' order granting bond, and remanded the case to that court for reconsideration of Petitioner's motion for bond with instructions to issue an order delineating its rationale for granting or denying bond pursuant to the factors set forth in *People v. Giacalone*, 16 Mich.App. 352, 167 N.W.2d 871 (1969).[2]

On February 10, 2000, the Michigan Court of Appeals granted Petitioner's Motion for Immediate Consideration and issued an order again granting Petitioner's motion for bond with a recitation of the *Giacalone* factors and an explanation of why Petitioner qualified for release on bond pending appeal.

On February 11, 2000, the Prosecutor again filed a Motion for Leave to Appeal with the Michigan Supreme Court.

On the afternoon of Friday, March 3, 2000, the Michigan Supreme Court granted immediate consideration and again vacated the Michigan Court of Appeals' order granting bond. The Michigan Supreme Court's per curiam order states that—contrary to the Michigan Court of Appeal's analysis—Petitioner did not satisfy the criteria for release on appeal bond. The Michigan Supreme Court did not give any explanation for its decision. The entire decision of the majority is as follows:

On order of the Court, the motion for immediate consideration is considered, and it is GRANTED. The application for leave to appeal from the February 10, 2000 decision of the Court of Appeals also is considered and, pursuant to MCR 7.302(F)(1) and MCR 7.316(A)(1) and (7), we VACATE the order of the Court of Appeals and DENY the defendant's motion for bond pending appeal. The de-

fendant does not satisfy the criteria for release on an appeal bond. MCR 7.209 and *People v. Giacalone*, 16 Mich.App. 352, 167 N.W.2d 871 (1969).

We further ORDER that the defendant report to the Department of Corrections, the Oakland County Sheriff or the Michigan State Police not later than 3:00 p.m. on March 4, 2000. If the defendant fails to report by that time, the Oakland County Circuit Court must issue a warrant for his immediate arrest.

Justice Markman concurred, stating that,

Because I do not share the premise of the dissent that there are different appellate standards of review for the grant or denial of appeal bonds by this Court and by the Court of Appeals, I join with the majority. I find no abuse of discretion on the part of the trial court.

Given the very recent procedural history of this case, this Court is puzzled as to why the Michigan Supreme Court would be reviewing a decision of the trial court for an abuse of discretion.

Justices Kelly and Cavanagh dissented, maintaining that "the majority of the Supreme Court has decided without explanation that the Court of Appeals majority was simply wrong and has vacated its order. The impression created is that the majority has ignored the analysis that the Court of Appeals undertook at its instruction and failed to give the deference to its decision that is due." In other words, according to Justices Kelly and Cavanagh, the Michigan Supreme Court did what it ordered the Michigan Court of Appeals not to do, namely denying bond without analyzing the factors in *People v. Giacalone*, 16 Mich.App. 352, 167 N.W.2d 871 (1969).

Just before the close of business on March 3, 2000, Petitioner filed his petition for a writ of habeas corpus with the United States District Court for the Eastern Dis-

---

**2.** The *Giacalone* factors are: (1) "[t]he likelihood that the defendant will appear when required in response to the order of the Court"; (2) "[t]he potential of harm to the community in the defendant being at large during the pendency of the appeal"; (3) "[t]he substantiality of the grounds of appeal"; and (4) "[t]he risk to the proper administration of justice." 16 Mich.App. at 355–57, 167 N.W.2d 871.

trict of Michigan in Detroit. Petitioner maintains that the Michigan Supreme Court's second order vacating his bond violates due process of law because it was an arbitrary decision that vacated a reasoned decision without explanation for doing so. Petitioner also filed "Emergency Ex Parte Request for Continuation of Bond Pending Hearing on 2241 Motion." Although this case was randomly assigned to this Court, Judge Denise Page Hood, acting as presiding judge, heard this motion on March 3, 2000 and entered a Temporary Restraining Order on Saturday, March 4, 2000. That Temporary Restraining Order was set to expire on March 17, 2000. See Fed.R.Civ.P. 65(b) (providing that a temporary restraining order expires in 10 days) and 6(a) (explaining the computation of time for periods of time that are less than 11 days).

On March 10, 2000, a hearing was held before this Court to determine whether the Court should extend the Temporary Restraining Order. At that hearing, appearances were filed by both Petitioner and Respondent Oakland County Sheriff's Department, and Respondent was afforded an opportunity to object to and oppose in open court Petitioner's Motion ·to Extend the Temporary Restraining Order. On March 13, 2000, this Court entered an Order extending the temporary restraining order an additional 10 days until March 31, 2000. See Fed.R.Civ.P. 65(b) (permitting a 10–day extension) and 6(a).·

**Prefatory Discussion**

The Court must now determine whether to enter a preliminary injunction until such time as the Court may rule on the merits of Petitioner's civil action. Before analyzing the substance of the parties' submissions and the applicable law, this Court wishes to dispel some misunderstandings that pervade the briefs submitted by the parties. The subtlety of the question before this Court has created lingering confusions that should not continue to muddy the already murky waters.

To begin with, this Court is not determining whether Petitioner should be granted bond pending appeal; that was an issue for the state courts to decide. This Court has not "assumed jurisdiction of the appeal bond issue," as Petitioner stated to the Michigan Supreme Court in his Answer to Appellant's Motion for Reconsideration. (Def. Answer at 5, ¶ 13.)

Similarly, this Court is not determining whether Petitioner's "conviction was obtained by violation of constitutional principles" (see Resp.Br. at 8); that is a matter for Petitioner's direct appeal in the state courts or for a federal court after Petitioner has exhausted his state remedies on the issues surrounding his direct appeal. This Court need not and will not "consider the substantiality of the grounds on appeal," in spite of Respondent's contention that this Court "would necessarily have to" in order to render a decision in this matter. (Resp.Br. at 3.)

The issue before this Court is whether the order of the Michigan Supreme Court that vacated, without a statement of reasons, the Michigan Court of Appeals decision that granted Petitioner bond pending appeal was a denial of Petitioner's federal constitutional right to due process. Petitioner has exhausted his remedies in the state courts on this issue: the question of bond pending appeal has been ruled upon by state courts at every level, including a final order from the Michigan Supreme Court. Petitioner has not exhausted his remedies in the state courts on his direct appeal, however, but, again, Petitioner's direct appeal is not before this Court.

Petitioner's contention that the temporary restraining order and the order extending it "preclude[ ] the State of Michigan from imprisoning Joseph Puertas until Judge Gadola completes his review of this matter," (Def. Answer at 5 ¶ 13), requires some clarification for fear of appearing exaggerated. If the Michigan Supreme Court were to issue an order tomorrow that vacates its prior ruling, denies Petitioner bond with reasons, and orders him to turn himself in, and if that order were consistent with federal due process re-

quirements, then the issue before this Court would be moot and this Court could not and would not prevent Petitioner from being remanded to jail. If the Michigan Supreme Court had stated such reasons for vacating the Court of Appeals grant of bond on appeal in its prior order, then this civil action probably would not be before this Court today. Even if this Court eventually were to rule favorably on Petitioner's application for a writ of habeas corpus, it may do so conditionally by ordering that the Court will grant a writ of habeas corpus within a specific number of days if the Michigan Supreme Court does not either grant bond pending appeal or deny bond pending appeal with a statement of reasons that are not arbitrary or constitutionally unreasonable and thereby satisfy federal due process requirements.

In spite of Respondent's assertion to the contrary, the Supreme Court did not offer reasons for its conclusion; it only provided the conclusion. The Supreme Court stated only that "the defendant does not satisfy the criteria for release on an appeal bond" citing Michigan Court Rule 7.209 and *People v. Giacalone,* 16 Mich.App. 352, 167 N.W.2d 871 (1969). The Supreme Court did not offer any reasons for thinking that Defendant did not satisfy the criteria for release.[3]

This Court is not in any way acting as an appellate court over state court decisions. Indeed, this Court is reluctant even to be perceived as encroaching on the territory of the state courts. Nevertheless, federal law clearly states that the district courts have jurisdiction to review an alleged denial of a federal constitutional right by the state courts.

**Standard for Preliminary Injunction**

■ In general, the purpose of a preliminary injunction is to maintain the status quo until the Court may rule on the merits of the underlying case. *See Blaylock v.*

*Cheker Oil Co.,* 547 F.2d 962 (6th Cir. 1976).

■ When determining whether to issue a preliminary injunction, a district court should consider four questions: (1) whether the moving party is likely to succeed on the merits of the action; (2) whether the preliminary injunction would save the moving party from irreparable harm; (3) whether the preliminary injunction would harm others; and (4) whether the public interest would be served by the preliminary injunction. *See Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 226–27 (6th Cir.1996); *Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 262 (6th Cir.1988); *DeLorean Motor Co. v. DeLorean,* 755 F.2d 1223, 1228 (6th Cir.1985); *Mason County Medical Association v. Knebel,* 563 F.2d 256 (6th Cir.1977). These four considerations "are factors to be balanced, not prerequisites that must be met." *DeLorean,* 755 F.2d at 1229.

**1. Whether Petitioner is likely to succeed on the merits**

The Court should first examine Petitioner's likelihood of success on the merits of his petition for a writ of habeas corpus. Even if Petitioner is unable to show that he is likely to succeed on the merits, however, the Court still may enter a preliminary injunction if the other factors are strongly in Petitioner's favor. *See DeLorean,* 755 F.2d at 1229; *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6th Cir.1982); *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537–38 (6th Cir.1978).

■ In general, cases throughout the federal courts hold that once a state has made provision for bond pending appeal, the arbitrary denial of such bond violates the Fourteenth Amendment of the United States Constitution. *See, e.g., United States ex rel. Walker v. Twomey,* 484 F.2d

---

**3.** The Court notes that these parties should be disappointed if, instead of issuing this order, this Court ruled instead by stating only that, "Petitioner has/has not satisfied the criteria

for a writ of habeas corpus," citing only Title 28, United States Code, Section 2241 and *Love v. Ficano,* 19 F.Supp.2d 754 (E.D.Mich. 1998).

874 (7th Cir.1973); *King v. Zimmerman,* 632 F.Supp. 271, 275 (E.D.Pa.1986); *Abbott v. Laurie,* 422 F.Supp. 976 (D.R.I. 1976). Where they differ is on what constitutes an arbitrary denial of bond. The question of whether the denial of bond pending appeal without a statement of reasons violates the Fourteenth Amendment has not been ruled on by a court within the Sixth Circuit. The Sixth Circuit has ruled that pre-trial denial of bail without a statement of reasons is a violation of the Fourteenth Amendment, *Atkins v. Michigan,* 644 F.2d 543 (6th Cir.1981), and a court within this judicial district has extended that principle in dicta to a post-conviction denial of bond to a detainee pending appeal without a statement of reasons for such denial, *Love v. Ficano,* 19 F.Supp.2d 754 (E.D.Mich.1998). This Court concludes that the holdings in *Atkins* and *Love* should be extended to the facts presented in this case to conclude that Petitioner has a likelihood of success on the merits of his petition for a writ of habeas corpus. The Court will discuss, at some length, the opinions in *Atkins* and *Love,* as well as some of the prominent cases from other judicial circuits.

### a. Cases within the Sixth Circuit

There are two applicable cases within the Sixth Circuit: *Atkins v. Michigan,* 644 F.2d 543 (6th Cir.1981) and *Love v. Ficano,* 19 F.Supp.2d 754 (E.D.Mich.1998).

### i. *Atkins v. Michigan,* 644 F.2d 543 (6th Cir.1981)

In *Atkins v. Michigan,* 644 F.2d 543 (6th Cir.1981), the petitioner was arrested on the charge of first degree murder and was released on bond by a judge of the Recorders Court in Detroit. 644 F.2d at 545. An examining magistrate reversed the judge of the Recorders Court and remanded the petitioner to jail without bond. *Id.* The trial judge reinstated the bond originally set, stating that neither she nor the examining magistrate had the jurisdiction to disturb the bond set by the judge of the Recorders Court. *Id.* A few days later, on emergency appeal, the Michigan Court of Appeals canceled the bond without out a statement of reasons and remanded the petitioner to jail. *Id.*

After months of legal wrangling over other matters, and while the case was still pending before the Court of Appeals, the petitioner moved the trial court to dismiss the action because his right to a speedy trial had been denied or release him on bond pending trial. *Atkins,* 644 F.2d at 545. The trial court ordered the petitioner released on $50,000 bond. *Id.* This order was appealed in an emergency fashion, and the Court of Appeals again canceled bond without a statement of reasons and remanded the petitioner to jail. *Id.* The petitioner's request to appeal this ruling was denied by the Michigan Supreme Court. *Id.*

The petitioner in *Atkins* filed a petition for a writ of habeas corpus with the federal district court requesting, in part, that the case be dismissed or that the bond set by the trial court be reinstated. *Atkins,* 644 F.2d at 545. Judge Anna Diggs–Taylor granted the writ and ordered that the case be dismissed and that the petitioner be released from custody. *Id.*

On appeal, the United States Court of Appeals for the Sixth Circuit considered the petitioner's "right to bail pending trial." The Sixth Circuit noted that "[t]he Michigan Constitution and statutes provide that before conviction all persons shall be permitted release on bail, except in cases involving murder or treason 'when the proof is evident or the presumption great,'" citing the Constitution of the State of Michigan, Article 1, Section 15, and Michigan Compiled Laws, Section 765.5. *Atkins,* 644 F.2d at 550. The Sixth Circuit also noted that "[t]he Michigan Court Rules, promulgated by the state Supreme Court, provide that if a lower court's bail decision is reviewed, it 'remains in effect and may not be vacated, modified, or reversed except on a finding of an abuse of judicial discretion,'" citing Rule 790.7(d) of the Michigan Court Rules. *Id.* In addition to being protected by state

law, the Sixth Circuit noted that the right to bail pending trial is "inherent in our American concept of liberty." *Atkins,* 644 F.2d at 549; *Mastrian v. Hedman,* 326 F.2d 708, 710 (8th Cir.1964). According to the Sixth Circuit, the right to bail pending trial is a "fundamental" and "important" liberty interest protected by the Due Process clause of the Fourteenth Amendment that may not be taken away arbitrarily. *Atkins,* at 550.

According to the Sixth Circuit, the parties and the district court had been concerned with discerning the possible reasons for the Michigan Court of Appeals decisions, including whether the state court concluded the presumption of guilt was great enough to deny bond or whether the state appellate court found that the trial court had abused its discretion. *Atkins,* 644 F.2d at 550. The Sixth Circuit held that such attempts to discern a rational basis to deny bond pending appeal were "guesswork" and "improper." *Id.* Instead, the Sixth Circuit held that,

> The lack of reasoning, the total silence of the Court of Appeals appears to constitute a violation of the Michigan Court Rules. *It also constitutes an arbitrary denial of [the petitioner's] fundamental interest in liberty pending trial and therefore violated his right to due process of law.* Here bond was twice canceled in cursory orders supplying no reasons. This renders any meaningful review impossible and violates the basic norms of judicial decisionmaking, which require that decisions generally be reached through reasoned argument, not by fiat. The fourteenth amendment does not permit such an important interest as that of liberty pending trial to be curtailed in so arbitrary a fashion. Reasons very well might exist to deny [the petitioner] his freedom on bail while he awaits trial. We do not address this question. *We state only that if his liberty is to be denied, it must be done pursuant to an adjudicatory procedure that does not violate the standards for*

> *due process established by the fourteenth amendment.*

*Id.* (citations omitted and emphasis added).

### ii. *Love v. Ficano,* 19 F.Supp.2d 754 (E.D.Mich.1998)

In *Love v. Ficano,* 19 F.Supp.2d 754 (E.D.Mich.1998), the state trial court judge granted the petitioner's motion for a new trial and the petitioner's motion for bond pending appeal of that decision. 19 F.Supp.2d at 756. The Michigan Court of Appeals granted the prosecution's application for leave to appeal the trial court's grant of a new trial and also ordered that the defendant remain in custody pending resolution of the appeal. *Id.* The Court of Appeals did not give any reasons for denying bond on appeal. The Michigan Supreme Court denied petitioner's appeal of the Court of Appeals' decision to vacate his release on bond, stating that it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Love,* 567 N.W.2d 246 (Mich. 1997); *see* 18 F.Supp.2d at 756.

The petitioner filed a petition for a writ of habeas corpus with the federal district court pursuant to Title 28, United States Code, Section 2241, challenging the state courts' denial of bond on appeal. The questions before the district court included (1) "whether [the petitioner] is effectively a pre-trial detainee or post conviction detainee"; (2) "whether petitioner ... has a fundamental interest in liberty pending the prosecutor's appeal of the grant of a new trial"; and (3) "whether, if petitioner had such a protected liberty interest, it was violated by the Michigan Court of Appeals cancellation of his bond without any explanation." *Love,* 19 F.Supp.2d at 756.

First, Judge Arthur J. Tarnow concluded that the petitioner was a pre-trial detainee rather than a post-conviction detainee, but noted that the parties agreed that Michigan Compiled Laws, Section 770.9a(2) governed the petitioner's admission to bail or bond. *Love,* 19 F.Supp.2d at 762. Section 770.9, entitled "Bail during

pendency of appeal or application for leave to appeal", states that, "During the pendency of an appeal or application for leave to appeal, a justice or judge of the court in which the appeal or application is filed may admit the defendant to bail, if the offense charged is bailable and if the offense is not an assaultive crime as defined in section 9a of this chapter." M.C.L. § 770.9. Section 9a applies only to detention and denial of bail where the defendant was convicted of an assaultive crime. Under Section 9a,

A defendant convicted of an assaultive crime and sentenced to a term of imprisonment who has filed an appeal or an application for leave to appeal shall be detained and shall not be admitted to bail unless the trial court or the court to which the appeal is taken finds by clear and convincing evidence that both of the following exist: (a) The defendant is not likely to pose a danger to other persons. (b) The appeal or application raises a substantial question of law or fact.

M.C.L. § 770.9a(2).

Second, Judge Tarnow found "that petitioner had a protected liberty interest in remaining at liberty on bond pending the prosecution's appeal of the trial court's opinion granting him a new trial." *Love*, 19 F.Supp.2d at 766. According to Judge Tarnow, "[t]his protected liberty interest was created by the trial court's decisions that petitioner's conviction was a miscarriage of justice and that he was entitled to release on bond pursuant to the factors set forth in M.C.L. § 770.9a(2)." *Id.* Although Judge Tarnow rejected the respondent's argument "that petitioner stands in the identical position as a defendant pending appeal whose conviction has not been disturbed at all," *id.* at 765–66, he stated in dicta that, "[a]lternatively, if petitioner is deemed a person seeking bond pending appeal, and not a pre-trial detainee, this Court would nonetheless find that petitioner had a protected liberty interest in remaining at liberty on bond." *Id.* at 766.

Third, Judge Tarnow found "that the Michigan Court of Appeals vacation of petitioner's release on bond pending the prosecution's appeal without any statement of the reason(s) for this action constituted an arbitrary denial of petitioner's protected liberty interest and violated his right to due process of law." *Love*, 19 F.Supp.2d at 766.

There does not appear to have been any attempt to appeal Judge Tarnow's decision in *Love* to the Sixth Circuit.

### b. Cases in other circuits

### i. *Finetti v. Harris,* 609 F.2d 594 (2d Cir.1979)

In *Finetti v. Harris*, 609 F.2d 594 (2d Cir.1979), several days after being sentenced, the petitioner filed a notice of appeal, a motion for a stay, and a motion for bond pending appeal with the state appellate court.[4] 609 F.2d at 596. The state appellate court justice denied bail pending appeal without stating any reasons. *Id.* While his appeal was pending before the state appellate court, the petitioner filed a petition for a writ of habeas corpus with the federal district court. *Id.* The district court denied the petition without prejudice for failing to exhaust state remedies. *Id.* The petitioner sought further relief from the state courts and then filed a second habeas petition in the district court. *Id.* After concluding that the petitioner had exhausted state remedies, the district court considered the merits of the petitioner's claims. *Id.* The district court concluded that once a state provides for bail pending appeal, it may not be denied without a statement of reasons, and such a denial without a statement of reasons was arbitrary per se and a violation of the petitioner's constitutional rights. *Id.* at 596–97.

The Second Circuit reversed the district court, holding that while a federal habeas corpus petition is appropriate for "seeking

---

**4.** The petitioner did not move the trial court for bond pending appeal. When the trial judge learned of the motion for bond pending appeal filed with the state appellate court, he remarked that "if this application had been made to this Court, this Court would deny that bail." *Finetti,* 609 F.2d at 602.

relief from arbitrary and unconstitutional denial of bail," nevertheless "considerations of federal-state comity require that the federal courts, when examining state court's denial of bail pending appeal, must presume regularity on the part of the state courts and that denial of bail without a statement of reasons is not arbitrary per se." *Finetti,* 609 F.2d at 599–600. To overcome the presumption of regularity, a petitioner must show that "there is no rational basis in *the record* for the denial of bail." *Id.* at 601 (emphasis added). What the *Finetti* Court meant by "the record" was not merely the opinion of the highest state court to decide the bail issue, but the entire record of the case in the state court, including the petitioner's personal history, whether the petitioner had been out on bail before his trial, whether the petitioner had appeared in court for all scheduled appearances, and the nature of the offense charged. *See id.* at 601–02. After examining these factors, the *Finetti* Court concluded that there was a rational basis in the record to deny bond pending appeal. *Id.* at 602.

This sort of search for a rational basis in the record was rejected by the Sixth Circuit in *Atkins,* as discussed above. The Sixth Circuit held that such attempts to discern a rational basis in the record to justify a denial bond without a statement of reasons was "guesswork" and "improper." *Atkins,* 644 F.2d at 550. The Sixth Circuit went on to hold that "[t]he lack of reasoning, the total silence of the [state appellate court] ... violated [the petitioner's] right to due process of law." *Id.* Hence, the Sixth Circuit in *Atkins* appears to have adopted the rule rejected two years earlier by the Second Circuit in *Finetti* that a denial of bail pending trial without a statement of reasons is arbitrary per se.

ii.   *United States ex rel. Walker v. Twomey,* **484 F.2d 874 (7th Cir. 1973)**

In *United States ex rel. Walker v. Twomey,* 484 F.2d 874, 875 (7th Cir.1973), the Seventh Circuit noted that "several

judges of the District Court for the Northern District of Illinois have arrived at conflicting views concerning a rule to be applied where persons convicted of a crime in a state court are denied bail pending appeal." Some district courts had held that "when the state court denies bail pending appeal and does not express any basis for its denial, such omission creates a presumption of arbitrariness," while others had declined to apply that presumption. *Id.* The Seventh Circuit settled on the rule stated in *United States ex rel. Kane v. Bensinger,* 359 F.Supp. 181 (N.D.Ill.1972), as follows:

the burden in these cases should rest on the convicted defendant to show that the state court has acted in an arbitrary fashion and that a "presumption of regularity" should attend all decisions of the state courts and not only those accompanied by oral or written explanations. This is not to say that the petitioner has lost his constitutional right or remedy. He can still attack the decision to deny him bail. He must, however, bear the burden of showing that the record provides no rational basis for the decision.

359 F.Supp. at 184.

In effect, this rule is the same as the rule articulated by the Second Circuit in *Finetti,* because the success of a petitioner who has been denied bond pending appeal depends on whether there is a rational basis for denying bond articulated in the record in spite of the state court not having articulated such a reason. The rule adopted by the Seventh Circuit in *Walker,* also clearly places the burden on the petitioner to show that there is no such rational basis, which is very difficult to satisfy. Because the Sixth Circuit rejected the "rational basis" rule set forth in *Finetti* and placed the burden on the state courts to articulate a reason for denying bond, the Sixth Circuit presumably would reject the rule set forth in *Walker.*

iii.   *Jenkins v. Harvey,* **634 F.2d 130 (4th Cir.1980)**

In *Jenkins v. Harvey,* 634 F.2d 130 (4th Cir.1980), the state trial court convicted

the petitioner and sentenced him to four consecutive five-year terms. The petitioner filed a timely notice of appeal and made a motion in the state trial court for bail pending appeal. 634 F.2d at 130–31. The trial court denied bail on the basis of a state statute which provides that no bail shall be allowed when the defendant has been sentenced to imprisonment for a term exceeding ten years. *Id.* at 131. The trial court also informed the petitioner that, in spite of this particular statute, the state supreme court retained the power to grant bail under the South Carolina Constitution. *Id.* The petitioner then filed a motion for bond in the South Carolina Supreme Court, which denied it without a statement of reasons. *Id.*

The petitioner filed a petition for a writ of habeas corpus in the federal district court seeking release on bail pending his state court appeal and any further appeal in the federal courts. *Jenkins,* 634 F.2d at 131. The petitioner claimed that he was entitled to a writ of habeas corpus releasing him from state custody on bail because the failure of state supreme court to provide a statement of reasons for its decision renders it arbitrary per se. *Id.*

The district court dismissed that petition, and the petitioner appealed. *Jenkins,* 634 F.2d at 131. On appeal, the Fourth Circuit observed that,

> Until recently there was a significant body of district court authority, principally in the Second Circuit, for the proposition that a state court's denial of bail pending appeal must be accompanied by a statement of reasons in order to withstand collateral attack. The rationale of the decisions adopting that rule was ... that a statement of reasons is necessary to enable a federal court to determine whether a state court's denial of bail is arbitrary or discriminatory, and to ensure that a habeas petitioner can obtain effective relief when he is entitled to it. As the clear weight of authority now recognizes, however, this rationale cannot justify a federal court's imposition of a requirement that state courts explain

their reasons for denying bail pending appeal.

*Id.* at 132 (citing *Finetti v. Harris, United States ex rel. Walker v. Twomey,* and *United States ex rel. Kane v. Bensinger,* among other cases).

The Fourth Circuit noted that "a brief explanation of the reasons supporting such decisions [denying bail on appeal] is desirable, especially when those reasons are not readily apparent from the record, because habeas corpus relief must be granted if no rational basis for denying bail pending appeal appears in the record." *Jenkins,* 634 F.2d at 132. "But established principles of comity and federalism preclude such a requirement when the bail decision of a state court is collaterally reviewed." *Id.* Furthermore, "such an explanation, however brief, ... is not required by the Constitution." *Id.* Therefore, the Fourth Circuit concluded, "we adopt the general rule now followed in the Second and Seventh Circuits and decline to require the state courts in this circuit to articulate their reasons for denying bail pending appeal." *Id.*

### c. Application of case law to the instant case

■ Petitioner here is similarly situated to the petitioner in *Love.* In *Love,* the petitioner was granted release on bond by the trial court; here, Petitioner was granted release on bond by the appellate court. As in *Love,* Petitioner here "is not challenging a reasoned *denial* of release on bond," 19 F.Supp.2d at 766 (emphasis added), as the petitioners were in *Finetti, Jenkins,* and the cases reviewed in *Walker.* Rather, as in *Atkins,* Petitioner here "is challenging a cancellation of release on bond without any statement of reasons." *Id.*

"[A]fter conviction, a defendant is not necessarily entitled to bail." *People v. Giacalone,* 16 Mich.App. 352, 354 n. 2, 167 N.W.2d 871 (1969) (citing *Carbo v. United States,* 82 S.Ct. 662, 7 L.Ed.2d 769, 7 L.Ed.2d 769 (1962)). "But the granting or

withholding of bail on appeal is not a matter of mere grace or favor." *Giacalone,* 16 Mich.App. at 354 n. 2, 167 N.W.2d 871 (citing *United States v. Motlow,* 10 F.2d 657 (7th Cir.1926)). As the court in *Love* stated, while "[t]here is no absolute federal constitutional right to release on bail pending trial or appeal," once a prisoner has been granted bond pending appeal, a "protected liberty interest" is created which cannot be taken away without "due process of law." 19 F.Supp.2d at 764, 766 (citations omitted).

The relevant issue here is not the different applicable presumptions between a pre-trial detainee and a post-conviction detainee, but rather that once a liberty interest is created—whether by operation of such a presumption in the statutory law or rules of court, or by the reasoned opinion of a court—that liberty interest cannot be taken away arbitrarily or unreasonably. Petitioner's liberty interest here is no less than the liberty interest of the parties in *Atkins* and *Love.* In *Atkins* and *Love* the petitioners' liberty interests were created by the statutory law that allows for bond and by the actions of the trial courts that granted the petitioners bond. Here, the liberty interest also was created by a state statute that allows for bond on appeal and by a court order. The different situations of a pre-trial detainee who has been denied bail and a post-trial conviction detainee who has been denied bond does not appear to justify adopting the rules adopted by the Second Circuit in *Finetti,* the Seventh Circuit in *Walker,* or the Fourth Circuit in *Jenkins* over the rules articulated by the Sixth Circuit in *Atkins* and by Judge Tarnow in *Love.*

Therefore, this Court concludes that Petitioner has a reasonable likelihood of success on the merits of this civil action, in which he seeks an injunction preventing his return to custody pending his appeal.

### 2. Whether a preliminary injunction would save Petitioner from irreparable harm

■ In order to obtain a preliminary injunction, the harm that would result in the absence of the injunction must be irreparable, not merely substantial. *See Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). A moving party's harm is irreparable if monetary damages are difficult to calculate or will not adequately compensate for the injury. *See Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992). In general, if the harm suffered by the moving party may be compensated by money damages, courts will refuse to find the harm irreparable. *See Sampson,* 415 U.S. at 90, 94 S.Ct. 937; *DeBeers Consolidated Mines Ltd. v. United States,* 325 U.S. 212, 219–20, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945).

There are two ways in which Petitioner may suffer irreparable harm in the absence of a preliminary injunction: (1) denial of a protected liberty interest, and (2) jeopardy to his physical health.

First, if the Court does not enter a preliminary injunction, Petitioner may be denied a protected liberty interest, as discussed above. Such a denial of a liberty interest is irreparable because monetary damages are difficult to calculate and, even if they could be calculated, they will not adequately compensate for the injury. *See Basicomputer Corp.,* 973 F.2d at 511.

Second, Petitioner has presented evidence of his ill health. (*See* Pet'r App. A (March 1, 2000 dictated report of Dr. G. Marinsecu).) Petitioner has been diagnosed with "severe coronary artery disease." (*Id.* at 3.) Petitioner recently was released from the hospital on medication because any operation would be "extremely difficult and potentially very dangerous." (*Id.* at 4.) Petitioner's disease is expected to progress, eventually resulting in a myocardial infarction. (*Id.* at 4.)

Respondent contends that "these facts have nothing to do with whether the Michigan Supreme Court denied Petitioner's due process rights." (Resp.Br. at 6.) While Petitioner's health does not have anything do to with whether the state court's actions violated Petitioner's constitutional rights, Petitioner's health does

have a lot to do with whether he will be irreparably harmed by sending him to prison at this time. Respondent asserts that "the only 'irreparable harm' is that the Petitioner would go to prison" and that "it is not irreparable injury for a convicted felon to begin serving his sentence while awaiting appeal of the underlying conviction." (Resp.Br. at 6.) In light of Petitioner's liberty interest and ill health, this Court disagrees with Respondent.

Respondent asserts that "Petitioner is in no different posture than any other criminal defendant who has been convicted, sentenced, and claims that he has been wrongly convicted." (Resp.Br. at 7.) Again, whether Petitioner has been wrongly convicted is not a question before this Court. Moreover, in spite of Respondent's assertion to the contrary, Petitioner's situation is different than that of many other criminal defendants because he was granted bond on appeal for reasons articulated according to the applicable standard and then had that bond taken away without reasons articulated. As the Court has explained above, this amounts to the denial of a protected liberty interest.

Therefore, this Court concludes that Petitioner likely will be irreparably harmed if the Court does not enter a preliminary injunction.

### 3. Whether the preliminary injunction would harm others

Petitioner contends that—in spite of his convictions for six counts of drug trafficking and one count of racketeering, and in spite of a guilty plea to drug trafficking in the early 1980s—he does not pose a threat to the community. Petitioner argues that he does not pose a threat because his conviction was marred by violations of "the most basic constitutional principles." (Pet'r Br. at 14.) This Court will not consider whether his conviction was fraught with constitutional problems as a measure of whether Petitioner poses a threat to others; those matters are for the state courts to decide on direct appeal.

Respondent contends that "Petitioner is a threat to this society and a potential harm to the community based upon his history of delivering drugs." (Resp.Br. at 7.) Furthermore, Respondent suggests that if Petitioner ultimately fails on his appeal in state court that "could provide a strong incentive for Defendant to flee." (*Id.*)

One of the factors considered by the Court of Appeals in deciding to grant bond pending appeal was, "[t]he potential of harm to the community in the defendant being at large during the pendency of the appeal." *People v. Giacalone*, 16 Mich. App. at 355–57, 167 N.W.2d 871. The Court of Appeals concluded that,

> While defendant pleaded guilty to delivery of cocaine and conspiracy to deliver cocaine in 1981, there is no other indication that the community will be harmed if defendant is released on bond. There are no allegations or evidence that defendant violated any laws or court orders while released on bond for two years following the filing of the instant charges. Nothing provided by the prosecutor suggests that the 72–year-old defendant poses any risk of harm to the community if permitted to remain free on bond pending appeal.

*People v. Puertas*, 461 Mich. 959, —— N.W.2d —— (2000). Furthermore, after considering Petitioner's "strong ties to his community," the Court of Appeals concluded that, "defendant's ties to the community and his history of appearing in response to court orders while on bond outweigh any flight concern engendered by the length of the sentence." *Id.* The Court of Appeals noted that "the prosecutor argues that defendant poses a risk of flight solely based on the length of the nature of [Petitioner's] convictions and sentence. If this were enough to show a risk of flight then nobody convicted of a drug-related felony could be allowed bond pending appeal." *Id.*

Respondent asserts that "[t]o say that Petitioner is not a potential harm to the

community is to say that illegal drug trafficking does not harm the community." (Resp.Br. at 7.) The Court rejects this exaggeration by Respondent. Both this Court, in extending the temporary restraining order, and the Michigan Court of Appeals, in twice granting Petitioner bond pending appeal, found that Petitioner did not pose a significant harm to the community, and yet both courts also would reject vigorously the suggestion that "illegal drug trafficking does not harm the community."

While this Court reasonably could decide the issue of harm to the community in either direction, this Court believes that entering a preliminary injunction would not cause substantial harm to others for the reasons stated by the Michigan Court of Appeals. As this Court stated in its Order Extending Temporary Restraining Order, the only reasoned opinion from the state courts concluded that Petitioner did not pose a harm to the community. Therefore, this Court finds that entering a preliminary injunction would not harm others.

### 4. Whether the public interest would be served by the preliminary injunction

Petitioner contends that "it would be a great disservice to the public to return Petitioner to prison without due process of law." (Pet'r Br. at 15.) Petitioner assumes that the Court already has found that the state courts violated due process guarantees, which it has not. The most that could be said here is that it is not in the public interest to return Petitioner to prison when he has a likelihood of success on the merits of his habeas petition.

Respondent responds that "[a] ruling reversing the Michigan Supreme Court's order denying petitioner bond on appeal on the facts of this case would be an unwarranted and unconstitutional encroachment upon the state courts of Michigan." (Resp.Br. at 8.) Again, this Court does not have the power to sit as an appellate court over any state court, much less "reverse" the ruling of a state court. In effect, Respondent seems to be arguing that the

federal courts do not have the power to grant a writ of habeas corpus to a person in custody under an order of a state court pursuant to Title 28, United States Code, Section 2241. Respondent is incorrect; there can be no doubt that this Court has jurisdiction over a claim that state court procedures violated a prisoner's federal constitutional due process rights. *See, e.g.,* 28 U.S.C. § 2241.

Respondent further responds that "petitioner's underlying conviction is on appeal and far from being finally determined by the state courts" and "petitioner has not exhausted his state court remedies." (Resp.Br. at 8.) Again, the questions surrounding Petitioner's underlying conviction are not before this Court, and while Petitioner has not exhausted state remedies as to his direct appeal, he has exhausted his state remedies as to the denial of bond on appeal. Therefore, Petitioner's habeas petition on the issue of the denial of bond on appeal is properly before this Court.

Finally, Respondent responds that the "public interest would not be served by releasing a twice convicted drug dealer into the community pending his appeal." (Pet'r Br. at 9.) As mentioned above, the Michigan Court of Appeals granted bond twice to Petitioner, once after expressly considering "[t]he potential of harm to the community in the defendant being at large during the pendency of the appeal." *Giacalone,* 16 Mich.App. at 356, 167 N.W.2d 871. As this Court found in its Order Extending Temporary Restraining Order, the only reasoned opinion from the state courts did not consider Petitioner to pose a threat to the public interest sufficient to warrant denial of bond. Therefore, this Court finds that the interests of the public would not be affected by entering a preliminary injunction.

Therefore, this Court will grant Petitioner's motion for a preliminary injunction.

### Posting of a bond

Finally, Rule 65 of the Federal Rules of Civil Procedure also requires that,

No restraining order or *preliminary injunction* shall issue *except upon the giving of security by the applicant,* in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Fed.R.Civ.P. 65(c) (emphasis added). It appears to this Court at this time that Respondent will suffer no loss or damage if a preliminary injunction is issued, so no bond or other security should be required of Petitioner.

### Conclusion

Accordingly, this Court being fully advised in the premises and for reasons stated on the record,

**IT IS HEREBY ORDERED** that Petitioner's Motion for Preliminary Injunction [Docket Entry 6] is **GRANTED.**

**IT IS FURTHER ORDERED** that Respondent Michigan Department of Corrections, Respondent Oakland County Sheriff's Department, and any other similar state or municipal entity to which Petitioner may be ordered to report, are enjoined from taking Petitioner into custody based on the facts surrounding this civil action until this Court rules on Petitioner's application for a writ of habeas corpus.

**IT IS FURTHER ORDERED** that, since it appears that Respondent will suffer no loss or damage by reason of this preliminary injunction, no bond or other security is required of Petitioner.

**SO ORDERED.**